# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | CASE NO.  5:18 CR 182 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| vs. | ) | |
| | ) | |
| JOSEPH TERLIZZI | ) | **MOTION FOR BOND** |
| | ) | |
| DEFENDANT. | ) | |

## Introduction

Now comes Defendant, by and through counsel, and respectfully moves the Court for a personal bond with conditions and an order granting his release. Mr. Terlizzi, who is a pretrial defendant currently detained at the Northeast Ohio Correctional Center is among the group of people the Centers for Disease Control and Prevention ("CDC") has categorized as most-at-risk for contracting COVID-19, a dangerous illness spreading rapidly across the world and through Northeast Ohio.

The Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The health risk to Defendant is heightened given the conditions at CCA as described in detail below, which necessitates temporary release on bail until this pandemic has ended. During the period of release Mr. Terlizzi will reside with his girlfriend Cheyenne Hawkins in Cleveland, Ohio and can be subject to home detention and GPS. Recently, the Cuyahoga County Prosecutors Office, the Criminal Defense Bar and Common Pleas judges have worked together to move inmates through

the system more rapidly. The collaboration balances the need to hold inmates accountable but to also protect human rights. A flurry of plea bargains and bond reductions have accomplished these twin aims. As a result of this collaboration, inmates are being held responsible but also being freed from the county jail on personal bonds or drastically reduced bonds.

## Factual Background

### *Changed Circumstances: COVID-19 Outbreak*

As of March 12, 2020, the new strain of coronavirus which causes COVID-19, has infected over 132,300 people, leading to at least 4,954 deaths worldwide.1 On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.2 Governor DeWine has in essence declared a State of Emergency for Ohio. Additional protective measures have been taken including stay at home measures and only essential people are permitted to continue with employment. As of March 30, 2020 there are almost 2,000 positive cases of COVID-19 in Ohio and almost 20 confirmed deaths.

The CDC has issued guidance that individuals who are not self-quarantining are at higher risk of contracting COVID-19. Any immediate preventative actions, including avoiding crowded areas and staying home as much as possible cannot occur.3 With confirmed cases in Ohio that indicate community spread, we must take every necessary action to protect vulnerable populations and the community at large.

### *Conditions of Confinement and Spread of Coronavirus*

Conditions of pretrial confinement create the ideal environment for the transmission of

---

1 *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (March 12, 2020), *at* https://nyti.ms/2U4kmud (updating regularly).
2 *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://bit.ly/2W8dwpS.
3 *People at Risk for Serious Illness from COVID-19*, CDC (March 12, 2020) *at* https://bit.ly/2vgUt1P.

2

contagious disease.4  Inmates cycle in and out of federal detention facilities from all over the world and the country, and people who work in the facilities including correctional officers, and care and service providers leave and return daily, without screening.  Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited..5  Many people who are incarcerated also have chronic conditions, like diabetes or HIV, which makes them vulnerable to severe forms of COVID-19.  According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."6  Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.7  In China, officials have confirmed the coronavirus spreading at a rapid pace in Chinese prisons, counting 500 cases.8  Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."9  Courts across Iran have granted 54,000 inmates furlough as part of the measures to

---

4 Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.
5 Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, *at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf
6 "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.
7 *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *at* https://bit.ly/2TNcNZY.
8 Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) *at* https://bit.ly/2vSzSRT.
9 Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) *at* https://cnn.it/2W4OpV7.

contain coronavirus across the country.10 In the U.S. steps are already being taken in some jurisdictions to facilitate the release of elderly and sick prisoners and to reduce jail populations by discouraging the refusing the admission of individuals arrested on non-violent misdemeanor charges.11

CCA's structure and physical layout increase the risk for spread of the virus and prevent those who are at risk from being able to engage in social distancing and self-quarantine precautions as recommended by the CDC such as shared toilet and sink use within individual, shared cells; the number of individuals held together in an individual cell, and in a housing unit; shared shower facilities, restrictions on movement, size of individual cells and shared spaces, etc. Defendant also has limited access to personal hygiene items such as tissues, soap, disinfectant, or hot water, and limited laundry and clothing which prevent individuals from taking recommended precautions to minimize the spread of the virus. State of the art hospitals are struggling at this moment, surely CCA lacks the resources necessary to engage in screening and testing of inmates, correctional staff, law enforcement officers and other care and service providers who enter the facility. As additional people are arrested who have been out in the community as the coronavirus spreads, if they are not symptomatic, they will be brought into the facility and held with the existing population, potentially bringing COVID-19 into this population held in large numbers, close quarters, and low sanitary conditions

---

10 Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) *at* https://apnews.com/af98b0a38aaabedbcb059092db356697.
11 In New York Brooklyn District Attorney Eric Gonzalez, joined by public health experts, has asked Governor Cuomo to grant emergency clemencies to elderly and sick prisoners (Sarah Lustbader, *Coronavirus: Sentenced to COVID-19*, The Daily Appeal (Mar. 12, 2020) *at* https://theappeal.org/sentenced-to-covid-19/.); Cuyahoga County (Ohio) is holding mass pleas and bail hearings to reduce the current jail population (https://www.cleveland.com/court-justice/2020/03/cuyahoga-county-officials-will-hold-mass-plea-hearings-to-reduce-jail-population-over-coronavirus-concerns.html); Mahoning County (Ohio) jail is refusing all non-violent misdemeanor arrestees (https://www.wkbn.com/news/coronavirus/mahoning-county-jail-refusing-some-inmates-due-to-coronavirus-outbreak/); see also Collin County (TX) (https://www.dallasnews.com/news/public-health/2020/03/12/facing-

A "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The circumstances that existed when Mr. Terlizzi was ordered detained have now changed. There is a pandemic that poses a direct risk that is far greater if he continues to be detained during this public health crisis.

Liberty is the norm and "detention prior to trial or without trials is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). One charged with a crime is, after all, presumed innocent. *Stack v. Boyle*, 342 U.S. 1, 4 (1951). A single individual unnecessarily detained before trial is one individual too many, and the increasing use of the practice places tremendous wear on our constitutional system. *United States v. Montalvo-Murillo*, 495 U.S. 711, 723–24 (1990) (Stevens, J., dissenting, joined by Brennan and Marshall, JJ.). Due to the crucial interests involved, it follows that a "case-by-case" approach is required at any stage of the case in assessing the propriety of pretrial detention. *See United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (discussing due process analysis for evaluating propriety of prolonged pretrial detention, and the interests at stake) (citations omitted), *cert. dismissed sub nom.*, *Melendez-Carrion v. United States*, 479 U.S. 978 (1986).

The courts have long recognized that there is no greater necessity than keeping a defendant alive, no matter the charge. As Judge Weinstein held, "We do not punish those who have not been proven guilty. When we do punish, we do not act cruelly. Continued incarceration of this terminally ill defendant threatens both of these fundamental characteristics of our democracy." *United States v. Scarpa*, 815 F.Supp.88 (E.D.N.Y. 1993) (pretrial defendant with AIDS facing murder charges released on bail because of the "unacceptably high risk of

coronavirus-concerns-collin-county-sheriff-asks-police-not-to-bring-petty-criminals-to-jail/);

infection and death on a daily basis inside the MCC").

This Court should consider the "total harm and benefits to prisoner and society" that continued pretrial imprisonment of Mr. Terlizzi will yield, relative to the heightened health risks posed to him during this rapidly encroaching pandemic.  *See Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (calling for heightened judicial scrutiny of the projected impact of jail and prison conditions on a defendant); *United States v. Mateo*, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004) (reducing sentence where defendant's pretrial conditions were "qualitatively more severe in kind and degree than the prospect of such experiences reasonably foreseeable in the ordinary case").

### Conditions of Release Are Available That Allow Mr. Terlizzi To Be Treated Humanely While Also Ameliorating Any Danger To The Community

From Mr. Terlizzi's perspective his life—not only his liberty—is on the line, creating a powerful incentive to abide by any release conditions the Court may impose and changing the calculus that initially led to the denial of bail in this case.  There are several conditions that can be imposed upon Mr. Terlizzi if he is released that will protect the community while he awaits his sentence.

### Conclusion

Mr. Terlizzi is among the vulnerable population at heightened risk of getting very sick from this illness.  For all of the above reasons, Defendant should be granted release on bond.

        Respectfully submitted,

        */s/ Craig T. Weintraub*
        CRAIG T. WEINTRAUB, ESQ. (#0040095)
        55 Public Square
        Suite 1600
        Cleveland, Ohio 44113
        (216) 896-9090
        (216) 456-2310 facsimile
        cweintraub@sbcglobal.net
        *Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

A copy of the foregoing was filed electronically and notice will be sent to all parties electronically by operation of the court's electronic filing system.

        s/ Craig T. Weintraub
        CRAIG T. WEINTRAUB, ESQ.